# 21-1491

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
*Plaintiff/ Appellee*,

v.

ABIODUN FABODE
*Defendant/ Appellant*.

_____

Appeal from the United States District Court
For the Eastern District of Michigan, Southern Division
Case No. 2:18-cr-20351 (Defendant 3)

---

## BRIEF OF THE APPELLANT, ABIODUN FABODE

---

Richard M. Shulman
Michigan State Bar No. P51931

24750 Lahser Road, Suite 105
Southfield, MI 48033
(248) 330-7800
rshulman@rshulmanlaw.com

ATTORNEY FOR THE
APPELLANT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................iv

    Cases................................................................................................................iv

    Statutes ..........................................................................................................vi

    Other Authorities........................................................................................vi

    Rules................................................................................................................vi

    Regulations.................................................................................................. vii

STATEMENT IN SUPPORT OF ORAL ARGUMENT........................... viii

JURISDICTIONAL STATEMENT.............................................................ix

STATEMENT OF ISSUES PRESENTED FOR REVIEW...........................xi

STATEMENT OF THE CASE ........................................................................1

    Procedural History.......................................................................................1

    Statement of Facts .......................................................................................1

SUMMARY OF ARGUMENT ......................................................................9

ARGUMENT .................................................................................................11

    Statutory Framework.................................................................................11

A.  The Court Erred by Failing to Correctly Resolve Disputed Sentencing
     Issues..........................................................................................................16

    1. Standard of Review ...............................................................................16

    2. The Court failed to rule on the Appellant's objection to the quantity of
      controlled substances, resulting in incorrect scoring of the guidelines. 16

    3. The sentence imposed created unwarranted sentencing disparities
      between parties similarly situated and constituted a penalty for
      exercising rights secured by the Fifth and Sixth Amendments to the US
      Constitution ..........................................................................................29

B.  The Court Erred Reversibly by Admitting Evidence of a Prior State
     Investigation and Consent Order Pursuant to Federal Rule of Evidence
     404(b)........................................................................................................31

Standard of Review on Appeal....................................................................33

Standard for admitting 404(b) Evidence ...................................................35

C.  The Appellant is Entitled to Reversal of his Conviction Due to the
Prejudicial Effect of Prosecutorial Misconduct ....................................39
Standard of Review......................................................................................39
1. The Government impermissibly vouched for the truthfulness of its
witnesses. .........................................................................................44
2. The Government repeatedly referred to facts not in evidence of an
inflammatory nature and misstated the evidence..............................51

D.  The Government Impermissibly Interfered with Mr. Fabode's Right to
Present a Defense by Convincing a Critical Witness Not to Testify.......55

Conclusion........................................................................................................65

CERTIFICATE OF COMPLIANCE ...............................................................67

CERTIFICATE OF SERVICE .........................................................................68

# TABLE OF AUTHORITIES

## Cases

*Baker* v. *United States*, 412 F.2d 1069 (5th Cir.1969)........................................ 27

*Brooks* v. *Tennessee*, 626 F.3d 878 (6th Cir.2010) ............................................. 46

*Dais* v. *Zant*, 36 F.3d 1528 (11th Cir.1994) ....................................................... 43

*Donnelly* v. *DeChristoforo*, 416 US 637, 651 (1974)........................................... 37

*Douglas* v. *Alabama*, 380 US 415 (1965) ............................................................. 38

*Earl* v. *United States.*,124 U.S.App.D.C. 77 (1966) ............................................. 54

*First Tech. Safety Sys., Inc.* v. *Depinet*, 11 F.3d 641(6th Cir.1993) .............. 30

*Gall* v. *United States*, 552 U.S. 38 (2007) ...................................................... 16, 25

*Giglio* v *United States*, 405 US 150 (1972)..................................................... 43, 45

*Harlamert* v. *World Finer Foods, Inc.*, 489 F.3d 767 (6th Cir.2007)........... 30

*Johnson* v. *United States*, 520 U.S. 461 (1997)..................................................... 35

*Johnson*, 27 F.3d at 1193 ....................................................................................... 33

*Peoples v. Lafler*, 734 F.3d 503 (6th Cir.2013)...................................................... 45

*Puckett* v *United States*, 556 US 129 (2009).......................................................... 35

*Schledwitz* v. *United States*, 169 F.3d 1003 (6th Cir. 1990)............................... 43

*Taylor* v. *United States*, 985 F.2d 844 (6th Cir.1993) ......................................... 39

*United States* v. *Hardy*, 643 F.3d 143 (6th Cir. 2011) ..................................... 32

*United States* v. *Acosta*, 924 F.3d 288 (6th Cir. 2019)....................................... 36

*United States* v. *Allen*, 619 F.3d 518 (6th Cir.2010)........................................... 31

*United States* v. *Baker*, 10 F.3d 1374, 1415 (9th Cir.1993)............................... 51

*United States* v. *Baro*, 15 F.3d 563 (6th Cir.1994)...................................... 19, 20

*United States* v. *Bell*, 516 F.3d 432 (6th Cir.2008) ...................................... 32, 33

*United States* v. *Bess*, 593 F.2d 749 (6th Cir.1979) ........................................... 37

*United States* v. *Brook*s, 628 F.3d 791 (6th Cir. 2011)..................................... 17

*United States* v. *Carroll*, 26 F.3d 1380 (6th Cir.1994)...........35, 36, 39, 40, 43

*United States* v. *Carter*, 779 F.3d 623 (6th Cir. 2015) .............................. 30, 33

*United States* v. *Carver*, 470 F. 3d 220, 246 (6th Cir. 2006) ......................... 20

*United States* v. *Chalmers*, 554 Fed.Appx. 440 (6th Cir.2014) ..................... 30

*United States* v. *Christman*, 607 F.3d 1110 (6th Cir. 2010)............................ 16

*United States* v. *Chube*, 538 F.3d 693 (7th Cir. 2008)...................................... 21

*United States* v. *Clay*, 667 F.3d 689 (6th Cir. 2012)........................................ 30

*United States* v. *Cobleigh*, 75 F.3d 242, 247 (6th Cir.1996).......................... 37

*United States* v. *Collington*, 461 F.3d 805 (6th Cir. 2006).............................. 17

*United States* v. *Collins*, 799 F.3d 554 (6th Cir. 2015) .................................... 46

*United States* v. *Correy*, 570 F.3d 373 (1st Cir. 2009)..................................... 19

*United States* v. *Dandy*, 998 F.2d 1344 (6th Cir.1993) .................................... 40

*United States* v. *Derrick*, 519 F. 2d 1 (6th Cir. 1975) ........................................ 27

*United States* v. *Donato*, 99 F.3d 426 (D.C. Cir.1996) ..................................... 44

*United States* v. *Elizondo*, 920 F.2d 1308 (7th Cir.1990) ................................. 44

*United State* v. *Feingold*, 454 F.3d 1001 (9th Cir. 2006) ......................... 13, 21

*United States* v. *Gill*, 348 F.3d 147 (6th Cir. 2003) ........................................ 19

*United States* v. *Godofsky*, 943 F.3d 1011 (6th Cir. 2019) ....................... 13, 47

*United States* v. *Goodwin,* 594 F.3d 1 (D.C. Cir.2010) ................................... 20

*United States* v. *Goodwin*, 625 F.2d 693 (5th Cir.1980) .................................. 55

*United States* v. *Hall*, 632 F.3d 331 (6th Cir. 2011) ...................................... 16

*United States* v. *Hernandez*, 227 F.3d 686 (6th Cir. 2000) ............................. 45

*United States* v. *Hughes*, 895 F.2d 1135 (6th Cir. 1990) ................................. 12

*United States* v. *Jenkins*, 593 F.3d 480 (6th Cir. 2010) .................................. 33

*United States* v. *Jones*, 641 F.3d 706 (6th Cir. 2011) ..................................... 16

*United States* v. *Kahn*, 989 F.3d 806 (10th Cir. 2021) .................................... 14

*United States* v. *Kaminski*, 501 F.3d 655 (6th Cir.2007) ................................. 17

*United States* v. *Kerr*, 981 F.2d 1050 (9th Cir.1992) ................................ 39, 43

*United States* v. *King*, 898 F.3d 797 (8th Cir. 2018) ....................................... 13

*United States* v. *Kohli*, 847 F.3d 483 (7th Cir. 2017) ...................................... 13

*United States* v. *Krebs*, 788 F.2d 1166 (6th Cir.1986) .................................... 36

*United States* v. *Leon*, 534 F.2d 667 (6th Cir. 1976) ................................. 36, 37

*United States* v. *Leonard*, 161 U.S.App.D.C. 36 (1974) .................................. 53

*United States* v. *Little*, 753 F.2d 1420, 1438 (9th Cir.1984) ........................... 51

*United States* v. *Lord*, 711 F.2d 887, 891 n. 3 (9th Cir.1983) ........................ 51

*United States* v. *Lovern*, 590 F.3d 1095 (10th Cir. 2009) ................................ 12

*United States* v. *MacCloskey,* 682 F.2d 468, 475 (4th Cir.1982) ................... 52

*United States* v. *Mann*, 701 F.3d 274 (8th Cir. 2012) ..................................... 19

*United States* v. *Manning*, 23 F.3d (1st Cir.1994) .......................................... 43

*United States* v. *Martinez*, 981 F.2d 867 (6th Cir.1992) ................................. 39

*United States* v. *Marzette*, 485 F.2d 207 (8th Cir. 1973) ................................ 27

*United States* v. *Miller*, 562 Fed.Appx. 272 (6th Cir. 2014) ........................... 32

*United States* v. *Monroe*, 943 F.2d 1007 (9th Cir.1991) ................................. 40

*United States* v. *Monus*, 128 F.3d 376 (6th Cir.1997) .................................... 37

*United States* v. *Moore*, 423 U.S. 122 (1975) .......................................... 11, 21

*United States* v. *Moreno*, 899 F.2d 465 (6th Cir. 1990) .................................. 19

*United States* v. *Morrison*, 535 F.2d 223 (3rd Cir. 1976) ............................... 54

*United States* v. *Morrow*, 977 F.2d. 222 (6th Cir.  1992) ............................... 17

*United States* v. *Myers*, 123 F.3d 350 (6th Cir. 1997) .................................... 32

*United States* v. *Myerson*, 18 F.3d 153 (2nd Cir. 1884) .................................. 43

*United States* v. *Olano*, 507 U.S. 725 (1993) ....................................................... 35
*United States* v. *Otuonye*, 995 F.3d 1191 (10th Cir. 2021) ............................ 12
*United States* v. *Peebles*, 624 F.3d 344 (6th Cir. 2010) .................................... 16
*United States* v. *Pinto*, 850 F.2d 927 (2d Cir.1988)............................................ 55
*United States* v. *Renteria*, 106 F.3d 765 (7th Cir.1997)................................... 39
*United States* v. *Ross,* 703 F3d 856 (6th Cir.2012) ............................................ 17
*United States* v. *Ruan*, 966 F.3d 1101 (11th Cir. 2020) .................................... 14
*United States* v. *Sabean*, 885 F.3d 27 (1st Cir. 2018)........................................ 13
*United States* v. *Serrano*, 406 F3d 1208 (10th Cir.2005)................................. 55
*United States* v. *Sypher*, 684 F.3d 622 (6th Cir. 2012)...................................... 45
*United States* v. *Teh* , 535 F.3d 511 (6th Cir. 2008) ........................................... 35
*United States* v. *Tobin*, 676 F.3d 1264 (11th Cir. 2012) .................................... 13
*United States* v. *Vandenberg,* 201 F.3d 805 (6th Cir. 2008)............................ 19
*United States* v. *Veal*, 23 F.3d 985 (6th Cir. 1994) ............................................. 12
*United States* v. *Velez*, 485 F. App'x 793 (6th Cir.2012)................................... 20
*United States* v. *Walker*, 761 Fed.Appx. 547 (6th Cir. 2019)......................... 35
*United States* v. *Walton*, 908 F.2d 1289 (6th Cir. 1990) ................................... 20
*United States* v. *Webb*, 403 F.3d 373 (6th Cir. 2005) ........................................ 17
*United States* v. *Wexler*, 522 F.3d 194 (2nd Cir. 2008) ..................................... 13
*United States* v. *Young*, 470 U.S. 1 (1985)............................................................ 42
*United States* vs *Kojayan*, 8 F.3d 1315 (9th Cir. 1993)..................................... 44
*United States.* v. *Hardy*, 643 F.3d 143 (6th Cir. 2011 ....................................... 31
*United States. v. Vavages,* 151 F.3d 1185 (9th Cir. 1998)............................... 51
*Washington* v. *Texas*, 388 US 14 (1967).......................................................51, 55
*Webb* v. *Texas*, 409 U.S. 95 (1972) .................................................................51, 54
*Workman* v. *Bell*, 178 F.3d 759 (6th Cir.1998) ................................................... 45

## Statutes

18 U.S.C. § 3742 ......................................................................................................... viii
18 U.S.C. §3553(a) ................................................................................................16, 26
21 U.S.C. § 841(a)(1) ................................................................................................. 11
21 U.S.C. §822(b) ........................................................................................................ 11
21 U.S.C. §841(a)(1) .....................................................................................................2
21 U.S.C. 829 ............................................................................................................... 12
28 U.S.C. § 1291 ......................................................................................................... viii

## Other Authorities

USSG §2D1.1................................................................................................................ 20

## Rules

Federal Rule of Criminal Procedure 52(b) ....................................................... 17

Federal Rule of Evidence 404(b) ................................................................. 9, 28, 30

**Regulations**

21 C.F.R. § 1306.04(a) ............................................................................................. 12

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

The Appellant requests oral argument. This appeal presents multiple sentencing issues, including the proper calculation of sentencing guidelines and issues of prosecutorial misconduct. The Court may have questions about the factual issues or legal arguments, and oral argument may be helpful to the Court in deciding this appeal.

# JURISDICTIONAL STATEMENT

This is an appeal from a criminal jury trial conviction and sentencing in the United States District Court for the Eastern District of Michigan, Southern Division. The district court had original jurisdiction over the case, pursuant to 18 U.S.C. §3231 which grants original jurisdiction to district courts over all offenses against the United States. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291(final decisions of district courts) and 18 U.S.C. § 3742 (review of a sentence).

The Appellant was sentenced on May 4, 2021. The Judgment of Sentence was entered on May 6, 2021. (R. No. 242, Judgment as to Abiodun Fabode, PageID# 2773). A timely Notice of Appeal, in accordance with Federal Rule of Appellate Procedure 4(b)(2), was filed on the same date. (R. No. 243, Notice of Appeal, PageID# 2780).  An Amended Judgment of Sentence was entered on July 1, 2021 (R. No. 252, PageID# 2811).

This appeal is from a final judgment that that disposes of all parties' claims.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

### I

Mr. Fabode was convicted, after trial, on drug conspiracy and substantive controlled substance distribution counts.  His sentencing guidelines were driven primarily by the controlled substance quantities. Prior to sentencing, Mr. Fabode objected to the quantity assessed under the proposed guideline scoring. Should this Court vacate the sentence imposed and remand for a resentencing, where the district court failed to make specific factual findings on the controlled substance quantities and sentenced, instead, on the basis of a higher guideline offense level than was supported by the evidence?

### II

The government sought to admit evidence, under FRE 404(b), of a 2011 State of Michigan administrative proceeding and settlement, including details of the initial investigation (disputed), initial administrative complaint (withdrawn by the State), and consent order settling the matter (in which Mr. Fabode made no admissions and plead no contest to a superseding administrative complaint). The admission of the 404(b) evidence raises two issues: (A) Did the district court err in admitting 404(b) evidence when the predicates to admissibility where not satisfied and the prejudice of admission was substantially outweighed by the prejudice, and (B) did the actions of the government deny due process to Mr. Fabode at trial when it exceeded the district court's ruling on admissible evidence repeatedly and falsely questioned Mr. Fabode before the jury in a manner calculated to leave the impression that he made admissions in the 2011 proceedings when the government was well-aware that the state matter was resolved without any admission being made?

### III

The government made repeated references to allegedly illicit controlled substance quantities and revenue received from sales that far exceeded the amount of controlled substances supported by evidence at trial. In addition, the government improperly vouched for the credibility of its witnesses at trial, where credibility was an essential issue to be considered by the jury.

Do these egregious incidents of prosecutorial misconduct entitle Mr. Fabode to a new trial?

## IV

Prior to trial, Mr. Fabode included his business partner, Mr. Bolanle, on his witness list. Did the government and court impermissibly interfere with Mr. Fabode's right to present a defense when the government dissuaded Mr. Bolanle from testifying by implying he had criminal liability, even though he was never charged with a crime and still had an active state pharmacy license at the time of the trial?

## STATEMENT OF THE CASE

### Procedural History

The Appellant Abiodun Fabode is a licensed pharmacist and co-owner of the Friendz Pharmacy in Detroit, Michigan. This appeal presents issues relating to Mr. Fabode's jury trial conviction for illegally dispensing controlled substances at the pharmacy and the 96-month sentence imposed by the district court after a contested hearing on guideline scoring issues.

On May 17, 2018, a grand jury returned a thirty-five count indictment against Mr. Fabode and five co-defendants. Seven of the counts related to Mr. Fabode (R.1, Indictment, PageID 1). The indictment remained sealed until May 31, 2018 (R.9, Order with Motion to Unseal Indictment, PageID 26).

Count One alleged that beginning in or about January 2015 through March 2018, the defendants conspired to unlawfully possess and distribute controlled substances, including but not limited to Schedule II drugs Oxycodone and Oxymorphone, in violation of 21 U.S.C.§§846 and 841(a)(1). Mr. Fabode's co-defendants in the conspiracy count included two individuals identified at trial as the organizers, a physician, and licensed pharmacists from different pharmacies. Counts Twenty-Six through Thirty-One alleged that Mr. Fabode dispensed oxycodone, outside the scope of

usual professional practice for no legitimate medical purpose, on six specific occasions, in violation of 21 U.S.C. §841(a)(1).[1]

At the time Mr. Fabode was indicted, he was in Nigeria on a medical mission, visiting relatives and attending a memorial for his mother-in-law. After learning of the charges, he immediately contacted counsel, who coordinated with the case agent to arrange Mr. Fabode's voluntary return to the United States and surrender at the point of entry. (Transcript, R.189, PageID 1213; R. 195, Page ID 2090-2092).

Mr. Fabode's initial appearance and arraignment were conducted on July 2, 2018. (See minute entries for July 2, 2018, before the Magistrate Judge.)

Prior to trial, the government filed a motion in limine, seeking to admit other acts evidence pursuant to FRE 404(b). (R.142 Motion in Limine). The motion was argued on October 22, 2019. Specifically, the government sought to admit evidence of a 2011 State of Michigan investigation into prescriptions that had been dispensed at Friendz Pharmacy, ultimately resolved with a consent order in which Mr. Fabode

---

[1] Shortly before trial, the Government filed a First Superseding Indictment, which removed the non-conspiracy counts related to the other co-defendants. No additional charges were lodged against Mr. Fabode, who proceeded to trial on the now seven-count indictment. (R. 129, First Superseding Indictment, PageID 585).

made no admission of guilt. Defense Counsel objected to the introduction of the evidence. The Court ultimately ruled that some of the proposed evidence could be admitted, and some was excluded. The arguments, ruling and violation of the ruling will be addressed later in this brief.

Mr. Fabode's jury trial commenced on October 24, 2019, and ended with the a jury verdict on November 13, 2019.  Mr. Fabode was convicted on Count One (conspiracy) and four counts of unlawful distribution (Counts Two, Three, Four and Seven). He was acquitted on two counts of unlawful distribution (Counts Five and Six). While the government asked the jury for specific findings that the conspiracy count involved Schedule II, III, IV and V controlled substances, the jury found that the conspiracy only included the Schedule II drugs.  (R. 152, Verdict Form, PageID 833).

On March 30, 2020, Mr. Fabode filed his Motion for a Judgment of Acquittal and New Trial. The motions were denied by the district court prior to sentencing.

On May 4, 2021, Mr. Fabode was sentenced to a 96-month term in the Bureau of Prisons, to be followed by a three-year term of supervised release.

## Statement of Facts

Abiodun Fabode had a dream and ambition. He emigrated to the United States from Nigeria in 1984, after earning an associate degree in chemistry. He worked to put himself through school at Morgan State University in Baltimore, earning a Bachelor of Science in chemistry. Working as a cab driver to pay for his expenses and tuition, he continued his education at Temple University in Philadelphia, where he obtained pharmacy training. Mr. Fabode became a licensed pharmacist in 1993. (Transcript, R.195, Page ID 2082)

After obtaining his license, Mr. Fabode worked for CVS, where he remained for the next 17 years. Rising through the ranks, he was selected to come to Michigan to help convert Arbor Drugs stores into CVS stores, after Arbor had been acquired. (Transcript, R. 195, Page ID 2083)

Wanting the opportunity to control his destiny and to be able to deal with people on a more personal level, Mr. Fabode longed to have his own pharmacy. When the opportunity arose, he leapt at the chance to own his own business with a fellow CVS pharmacist, Olugbade Bolanle.

The two partners methodically searched for a good location and found a large building next to Sinai-Grace Hospital in Detroit. They believed it was ideal because the hospital generated a lot of traffic, and they needed to build

a customer base. (Transcript, R. 195, Page ID 2084). A large hospital like Sinai-Grace draws patients from a wide geographic area.

The building's size also presented the partners with some options that could be useful in further increasing the volume of customers. They partitioned the building into sections, converting the front part into the pharmacy. They intended to use the part of the back for storage, and part for space that could be rented as a medical office. There was plenty of room for a doctor to fix up the space into an office, which the partners hoped would generate sales at the pharmacy from patients. (Transcript, R. 195. Page ID 2085)

Their business – Friendz Pharmacy – opened in 2010. Lacking much of an advertising budget, they marketed themselves to doctors in the area and to licensed adult foster homes which housed several patients in the same location. The pharmacy developed business by word of mouth. In addition to patients themselves, the pharmacy dealt with caregivers who picked up prescriptions – including those providing services at the adult foster care homes, those who supplied services to "home on board" (where caregivers help with daily activities of living such as feeding, laundry, prescriptions, but are not present at the home 24/7), and those who provided direct care services to family members or individuals. Depending on the specifics of the

location where they provided services, some caregivers picked up prescriptions for multiple patients. (Transcript, R. 195, Page ID 2086-2090).

Over the next eight years, Friendz Pharmacy filled prescriptions for thousands of patients, written by hundreds of doctors.

This case is about the dispensing of prescribed controlled substances at the pharmacy, which the government argued Mr. Fabode did outside the scope of his pharmacy license and for no legitimate medical purpose. The government argued that, essentially, Mr. Fabode was nothing more than a drug pusher. The government asserted repeatedly that more than 250,000 pills were dispensed with an illicit purpose.

What the government didn't make clear to the jury and the court was that the number of pills it claimed was at issue had been prescribed by over a hundred doctors and covered approximately 1,115 different patients. At trial, however, the government only presented evidence that related to a single physician, who prescribed fewer than 15% of these pills to less than 15% of the total customers.[2] That physician was Dr. Vasan Deshikachar.

---

[2] When prescriptions for controlled and non-controlled substances are considered together, the percentage of prescriptions at issue are even smaller, relative to all medications dispensed at the pharmacy. During the period covered by the Indictment – January 1, 2015 through March 31, 2018 – the pharmacy filled a total of 42,686 prescriptions.

6

Mr. Fabode met Dr. Deshikacher for the very first time when the doctor came into the pharmacy after seeing a sign on the building advertising  medical office space for rent. The doctor said he was buying and renovating the building next door to use as an office, and wanted to lease the medical office space temporarily, as well as use the storage space to store medical equipment from his old office. (Transcript, R. 196 Page ID 2138, 2157))

The office rented to the doctor was located in the rear, partitioned-off area of the building. A door separated the pharmacy from the area in which the doctor's office was located. Inside the area of the doctor's office a curtain was installed for further privacy – people in the pharmacy could not see into the doctor's office. Dr. Deshikachar rented the space in the pharmacy for 2-3 months, before moving next door (Transcript, R. 196, Page ID 2157).

According to the government, the conspiracy began with a wife and husband, Niesheia and Andre Tibu, who devised and executed a plan to divert prescription medications and sell them at the street level. The Tibu's recruited people to act as patients in order to obtain prescriptions. The Tibu's paid the patients cash for their participation, and instructed them on what to say to the doctor to obtain the prescription. With the prescription in hand, the

Tibus took the patients to any one of a number of pharmacies, where the patients signed authorizations allowing the Tibus to pick up the prescriptions for them. Some of these prescriptions were paid for in cash. After leaving the pharmacies with the dispensed medication, the Tibu's retained the pills and sold them. (Transcript, R. 189, Page ID 1260-1265)

Niesheia Tibu testified that she needed asked Mr. Fabode if he could recommend a doctor for her patients. Mr. Fabode suggested Dr. Deshikachar, who was renting space at that time. Doctor Deshikachar wrote prescription for the patient that Ms. Tibu brought to him. (Transcript, R. 192, Page ID 1261)

The Doctor explained that his offices were temporarily located for a short time in the pharmacy, but he moved his offices to the building he purchased as quickly as he could, because he didn't want Mr. Fabode to know the volume of his practice. (Transcript, R.192, Page ID 1605-1606). He testified that there was no discussion of illegal prescribing with Mr. Fabode and that there was no suggestion that he was required (or even encouraged) to send the patients to Friendz, as opposed to other pharmacies. (Transcript, R.192, Page ID 1599, 1607-1608, 1601)

## SUMMARY OF ARGUMENT

This appeal involves issues arising from the government's use of unfounded inferences, arguments not supported by evidence, impermissible vouching and other improper tactics in order to secure a conviction and an unreasonably severe sentence.

Despite a lack of evidence that started at trial and continued through sentencing, the government argued that the Appellant should be held responsible to the illegal dispensing of more than 200,000 pills and the collection of almost $2 million dollars in proceeds. These oft-repeated figures were nothing more than speculation built on conjecture. Mr. Fabode objected to the government's argument at sentencing. Without deciding on the correct quantity of controlled substances, the Court sentenced Mr. Fabode. Correct guidelines are the necessary starting point for sentencing. The case should be remanded to the district court for specific findings. Alternatively, Mr. Fabode asks this Court to find that the sentence imposed was substantively unreasonable.

Mr. Fabode also asks this Court to reverse his convictions and remand the case for several reasons. The Court erred in admitting evidence pursuant to Federal Rule of Evidence 404(b) regarding a State of Michigan

administrative consent order, which was too remote to be relevant. In addition, after the court admitted the evidence in part, the government committed misconduct by attempting to impeach Mr. Fabode with what it characterized as admissions in the state proceeding when all along the government was clearly in possession of evidence showing a no-contest resolution, with an absence of admissions.

The prosecution's misconduct continued in crucial way, and the combination of misconduct rises to the level of prejudice that entitles Mr. Fabode to the reversal of his convictions. Specifically, in a case where the jury's assessment of credibility was paramount, the government impermissibly vouched for the truthfulness of the cooperating witnesses it called at trial. The government also argued facts not in evidence, in an inflammatory manner, by impermissible exaggerating the extent of controlled substances and money involved in the allegations.

Finally, the convictions should be reversed because the government impermissibly interfered with Mr. Fabode's right to present a defense by influencing a critical witness not to testify, based on spurious suggestions of the criminal liability, when the government has never charged the witness with wrongdoing, and that witness, to this day, is still a practicing pharmacist with a valid state pharmacy license.

# ARGUMENT

## Statutory Framework

Mr. Fabode was convicted at trial of drug distribution conspiracy and substantive drug distribution counts, in violation of the Controlled Substances Act ("CSA"). The CSA makes it unlawful for "any person knowingly or intentionally . . . to manufacture, distribute, or dispense" a controlled substance "[e]xcept as authorized by this subchapter." 21 U.S.C. § 841(a)(1). "This subchapter" authorizes person who have registered with the Attorney General to distribute controlled substances "to the extent authorized by their registration. 21 U.S.C. §822(b).

In *United States* v. *Moore*, 423 U.S. 122 (1975), the Supreme Court acknowledged that that CSA "does not spell out . . . in unambiguous terms" when a practitioner may be subject to prosecution for federal narcotics offenses. However, licensed and registered pharmacists, such as Mr. Fabode, are recognized as acting with authorization so long as they dispense controlled substances pursuant to the CSA's relevant implementing regulation. The regulation states:

> A prescription for a controlled substance to be
> effective must be issued for a legitimate medical
> purpose by an individual practitioner acting in the
> usual course of his professional practice. The
> responsibility for the proper prescribing and
> dispensing of controlled substances is upon the

11

> prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.
>
> 21 C.F.R. § 1306.04(a) (emphasis added).

The regulation's "corresponding responsibility" language prohibits pharmacists from filling prescriptions if they have reason to know that the prescriptions were not issued for legitimate medical purposes. See *United States* v. *Veal*, 23 F.3d 985, 988 (6th Cir. 1994) (per curiam); *United States* v. *Hughes*, 895 F.2d 1135, 1143 n.11 (6th Cir. 1990); *United States* v. *Lovern*, 590 F.3d 1095, 1101 (10th Cir. 2009). *United States* v. *Otuonye*, 995 F.3d 1191 (10th Cir. 2021).

The Sixth Circuit recognizes a good faith defense for pharmacists dispensing controlled substances. A pharmacist's claim of good-faith compliance with proper pharmaceutical practice is judged by an objective standard, which asks "whether a reasonable [pharmacist] under the circumstances could have believed, albeit mistakenly, that he has acted within the scope of ordinary professional medical practice for a legitimate

12

purpose." *United States* v. *Godofsky*, 943 F.3d 1011, 1026 (6th Cir. 2019),

citing *United States* v. *Volkman*, 797 F.3d 377 (6th Cir. 2015).[3]

---

[3] There is currently a split amongst the Circuits with respect to the proper standard regarding the good faith of a practitioner who prescribes or dispenses controlled substances. This Circuit, together with the Eighth, Fourth and Second Circuits, uses an objective standard, which entitles a practitioner to acquittal if they "reasonably believed" that their conduct complied with professional norms. See *United States* v *Volkman*, 797 F.3d 277, 387-388 (6th Cir. 2015); *United States* v. *King*, 898 F.3d 797, 807-808 (8th Cir. 2018); *United States* v *Hurwitz*, 459 F.3d 463 (4th Cir.2006*); United States* v. *Wexler*, 522 F.3d 194 (2nd Cir. 2008).

The Ninth, First and Seventh Circuits go further and recognize a subjective standard, requiring that the government prove that a practitioner *intentionally* exceeded the bounds of professional practice. See *United States* v. *Feingold*, 454 F.3d 1001, 1008 (9th Cir. 2006); *United States* v. *Sabean*, 885 F.3d 27, 45-46 (1st Cir. 2018); *United States* v. *Kohli*, 847 F.3d 483 (7th Cir. 2017).

The Tenth and Eleventh Circuits reject the good faith defense entirely and impose strict liability on doctors acting outside the scope of professional practice. See *United States* v. *Tobin*, 676 F.3d 1264 (11th Cir. 2012).

To convict Mr. Fabode of his charged offenses the government was required to prove beyond a reasonable doubt that the pharmacist did not reasonably believe that the prescriptions he dispensed fell within the scope of ordinary medical practice for a legitimate purpose.

In November, the Supreme Court granted certiorari to reconcile the inter-circuit split in authority. See *United States* v. *Ruan*, 966 F.3d 1101 (11th Cir. 2020), *cert. granted*, ___ U.S.L.W. ___ (U.S. November 5, 2021)(No. 20-1410), consolidated with *United States* v. *Kahn*, 989 F.3d 806 (10th Cir. 2021), *cert. granted* ____ U.S.L.W. ____ (U.S. November 5, 2021)  (No. 21-5261).

At trial, Mr. Fabode presented evidence, including his own testimony, that supported both objective and subjective beliefs that he dispensed controlled substances in good faith. Consistent with the current controlling authority in the Sixth Circuit, the District Court instructed the jury only on the objective good faith standard. See Page ID# 2379-2380, transcript of district court's instructions to the jury). Mr. Fabode would have requested a good faith instruction that utilized the subjective standard had it been available at the time of his trial.

**A. The Court Erred by Failing to Correctly Resolve Disputed Sentencing Issues.**

There is, perhaps, no greater illustration of the government's use of improper inferences and extrapolations, intended to prejudice Mr. Fabode, than the arguments made in support of its recommendation to sentence Mr. Fabode to a sentence at the statutory maximum of 240 months. The recommendation was based primarily on a calculation of drug quantity that far exceeded the evidence presented at trial, and ignores that jury's rejection of the some of the government's theory at trial. This was a continuation of the prosecutorial misconduct used to secure a conviction at trial, which will be addressed later in this brief.

In addition, the court erred when it failed to make specific findings as to the quantity of controlled substances, on which the guideline calculation was based. While the Court granted a downward variance from the guideline range it chose, Mr. Fabode is still entitled to a correctly calculated guideline range as the proper starting point.

Finally, the sentence imposed by the court is substantively unreasonable. The only explanation for the length of Mr. Fabode's sentence – which is nearly three times longer than the leader/organizer, approximately 5 times longer than the average sentence for the other pharmacists, and 48

times longer than the prescribing physician – is that it was imposed in retaliation for proceeding to trial.

## 1.  Standard of Review

A district court's sentences are reviewed for both procedural and substantive reasonableness under the abuse of discretion standard. *Gall* v. *United States*, 552 U.S. 38, 51 (2007). A district court abuses its discretion when it imposes a sentence that is either procedurally or substantively unreasonable. *United States* v. *Hall*, 632 F.3d 331, 335 (6th Cir. 2011); *United States* v. *Christman*, 607 F.3d 1110, 1117 (6th Cir. 2010).

Sentences are procedurally unreasonable if the district court does not calculate the Guideline range or calculates it improperly, treats the Guidelines as mandatory, fails to consider the factors in 18 U.S.C. §3553(a), selects a sentence based on clearly erroneous facts, or gives an inadequate explanation for the sentence. *United States* v. *Jones*, 641 F.3d 706, 711 (6th Cir. 2011); *United States* v. *Peebles*, 624 F.3d 344, 347 (6th Cir. 2010). See also, *Molina-Martinez* v. *United States*, 136 S.Ct. 1338 (2016) A sentence may be substantively unreasonable if the District Court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent 18 U.S.C. §3553(a) factors, or gives an unreasonable amount of

16

weight to any pertinent factor. *United States* v. *Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (citing *United States* v. *Webb*, 403 F.3d 373, 383 (6th Cir. 2005).

     The district court's factual findings are reviewed for clear error. Legal conclusions regarding the guidelines or their application are reviewed de novo. *United States* v. *Brook*s, 628 F.3d 791, 796 (6th Cir. 2011); *United States* v. *Kaminski*, 501 F.3d 655, 665 (6th Cir. 2007) Error that was not objected to in the district court is reviewable for plain error. See Federal Rule of Criminal Procedure 52(b). *United States* v. *Morrow*, 977 F.2d. 222, 226 (6th Cir. 1992), cert denied, 508 U.S. 975 (1993). [if Bostic question not asked, review is abuse of discretion not plain error (*United States* v. *Ross,* 703 F3d 856, 884-85 (6th Cir. 2012) ).

### 2. The Court failed to rule on the Appellant's objection to the quantity of controlled substances, resulting in incorrect scoring of the guidelines.

     Mr. Fabode was initially assessed a base offense level of 36, premised on a quantity of controlled substances with a converted drug weight of 49,225.31 kg. In order to reach this weight, the government simply took the total number of Oxycodone 30 mg, Opana ER 40 mg, and Oxymorphone 40mg doses dispensed to any patient during the indictment period and made

the assumption that every single doses was illicit.[4] As result of this gross extrapolation, Mr. Fabode was initially scored with a guideline range of life imprisonment, after enhancements – a range that far, far exceeded that of any other co-defendant in this case, and greatly overstated his culpability.

The extrapolation is as wrong as the motivation behind it. This is an obvious attempt by the government to punish Mr. Fabode for exercising his constitutional right to a trial. During the period of the charged conspiracy, a large number of physicians prescribed the Schedule II controlled substances dispensed at Friendz Pharmacy, for a large number of patients, according to the government's spreadsheet exhibit (Exhibit 54).  The proofs at trial, however, focused on only one physician– Dr. Deshikachar, who admitted that he went to lengths to conceal his manner and volume of prescribing from Mr. Fabode.

The assumption that each and every dose prescribed by each and every one of the physicians was illegal – including those in counts for which

---

[4] The Government has tried to cast their calculation as conservative. It is anything but that. For reference, the Government has not asserted that any other co-defendant in this case is responsible for more than 8,085 kg in converted drug weight. That quantity corresponds to a base offense level of 32.

Mr. Fabode was acquitted – was wholly speculative and unsupported by the evidence presented at trial. The resultant *eightfold* increase in converted drug weight and concomitant four-level increase of the base offense level from 32 to 36 was improperly assessed.

The Government has the burden of proving each guideline score it suggests, unless it is conceded by the defendant. *United States* v. *Vandenberg,* 201 F.3d 805, 811 (6th Cir. 2008). The statements in the Presentence Report are not in evidence. *United States* v. *Mann*, 701 F.3d 274, 310 (8th Cir, 2012). The Presentence Report's scorings should be based on the evidence at trial, not the allegations in the Indictment. *United States* v. *Correy*, 570 F.3d 373, 383-84 (1st Cir. 2009). The government's scoring was not supported by the evidence.

Because Mr. Fabode objected to the allegations of drug quantity in the PSR, the government bears the burden of establishing, by a preponderance of the evidence, the quantity of drugs involved in the crime. *United State*s v. *Gill*, 348 F.3d 147, 153-154 (6th Cir. 2003); *United States* v. *Baro*, 15 F.3d 563, 569 (6th Cir.1994); *United States* v. *Moreno*, 899 F.2d 465, 473 (6th Cir. 1990). The Sentencing Guidelines use drug quantity as a proxy for culpability, assuming that the greater the amount at issue, the more

19

blameworthy the defendant is. *United States* v. *Goodwin,* 594 F.3d 1,5 (D.C. Cir.2010).

A defendant in a drug conspiracy is generally responsible for the drug quantities for which he is directly involved and any quantity that is a reasonably foreseeable consequence of the conspiracy. *United States* v. *Velez,* 485 F. App'x 793, 799 (6th Cir.2012) cert denied, 133 S. SCt. 557 (2012) (citing *United States* v. *Carver,* 470 F. 3d 220, 246 (6th Cir. 2006). Where the amount is uncertain, the district court is encouraged to "err on the side of caution" and only hold the defendant responsible for that quantity of drugs for which "the defendant is more likely than not actually responsible." *United States* v. *Walton*, 908 F.2d 1289 (6th Cir. 1990). In determining the quantity of drugs, particularly when the disputed quantity may involve a significant increase in the offense level, the district court cannot sentence a defendant based on conjecture, without specific findings. *Baro,* 15 F.3d 563 (remanding case for resentencing when district court failed to make specific factual findings regarding quantity of drugs to support a two-level in increase in the base offense level).

The need for specific evidence is particularly acute in Mr. Fabode's case. The difference between the defense scoring of USSG §2D1.1 and that urged by the government is four offense levels -- with the government

attributing to Mr. Fabode a drug quantity orders of magnitude higher than that attributed to any other defendant in this case, including the leaders and organizers of the much wider alleged conspiracy.

The nature of this case also differs from the majority of drug cases scored under §2D1.1 in that it was not unlawful for Mr. Fabode to possess Oxycontin and Oxymorphone. As a licensed pharmacist, he was authorized to obtain and lawfully dispense the prescriptions. His dispensing was illegal only to the extent that any particular prescription is knowingly and intentionally dispensed outside the scope of his professional practice *and* for no legitimate medical purpose. *United States* v. *Feingold*, 454 F.3d 1001, 1008 (9th Cir.2006); see also *United States* v. *Moore*, 423 U.S. 122, 138-143 (1975). In order to prevent an unjust result "any legitimate prescriptions must be deducted from the pill totals before a final determination of relevant conduct is possible. *United States* v. *Chube*, 538 F.3d 693, 702, 705-706 (7th Cir.2008).

In Mr. Fabode's case– where the testimony focused primarily on prescriptions written primarily by one physician, with a handful of other doctors mentioned in passing, the government must do much more than provide a grand total of the pills dispensed by the pharmacist. The need is particularly apparent when, as here, the jury rejected the Government's

theory that all scheduled controlled substances dispensed during the conspiracy were dispensed illegally.[5]

Nevertheless, the Government asked the court to conclude, instead, that *every single tablet* of Oxycodone 30 mg, Opana 40 mg and Oxymorphone 40mg, by *every single doctor* writing a prescription for these medications that was dispensed during the indictment period was illicit, a total of 209,310 Oxycodone 30 mg pills and 35,770 Oxymorphone 40 mg

---

[5] The Government asked for specific findings from the jury that the conspiracy involved the diversion of controlled substances in Schedules II, III, IV, and V, which was also reflected on the verdict form provided to the jury. See transcript of Government's Closing Argument, R.199, Page ID 2419-2420. The Jury specifically rejected  the argument that the conspiracy extended to Schedule III, IV and V controlled substances. See R.152 – Jury Verdict Form. The Government introduced evidence, identifying all controlled substance prescriptions dispensed during the indictment period, reflecting that Friendz Pharmacy also dispensed Schedule III, IV and V medications, pursuant to prescriptions written by Dr. Deshikachar, as well as other physicians mentioned in passing, during the indictment period. See Government Exhibit 54 – Friendz Pharmacy MAPS data.

pills. The government based its argument primarily on the testimony of two witnesses – Niesheia Tibu and Dr. Deshikachar.

Ms. Tibu testified that she had 80 patients, at most, that she used to obtain prescriptions from pharmacies including Friendz. ECF 189, Page ID 1259. She used 25-30 of these patients to get prescriptions from Dr. Deshikachar, ECF 189, Page Id 1262; ECF 191 Page ID 1570. Given the limited number of patients that she brought to the pharmacy, Ms. Tibu could not possibly provide reliable insight into the overwhelming majority of the pharmacy's transactions.

Dr. Deshikachar testified that all the prescriptions he wrote during the indictment were unlawful. However, he admitted that Mr. Fabode was not present in the meetings between a patient and the doctor, and the doctor similarly did not involve himself with Mr. Fabode's operation of the pharmacy. Dr. Deshikacher testified that he didn't tell Mr. Fabode that his patients were illegitimate. (Transcript R.191, Page Id 1549). Dr. Deshikachar didn't know Mr. Fabode before he rented the office, temporarily, in the back of the pharmacy. He only rented the office in the Friendz building for a short period before moving next door, motivated in significant part by his desire to *prevent* Mr. Fabode from seeing how many patients he was seeing. (Transcript, R. 192, Page Id 1606). Moreover,

23

running contrary to the government's insinuation of a coordinated conspiracy, the doctor testified that he had no obligation to send all his patient to Friendz and Mr. Fabode didn't care if his patients filled the prescription at Friendz or some other pharmacy. (Transcript, R.192, Page ID 1608).

Without factual support the government argued, painting with a broad brush, that the each of the 2,369 prescriptions for oxycodone 30 mg and 600 prescriptions for Oxymorphone 40 mg should be included in the weight calculation under the §2D1.1, never disclosing to the court that this sum actually includes prescriptions for oxycodone 30 mg written by 97 doctors and oxymorphone 40 prescriptions written by 45 doctors, covering approximately 1,115 different patients.[6] In actuality, evidence introduced at trial showed that for the Deshikachar patients, Friendz pharmacy filled only 343 prescriptions for oxycodone 30 mg for 139 patients, oxymorphone 40 mg for 24 patients, and Opana 40 mg for 3 patients.

---

[6] To provide further context, this is an average of only 61 Oxycodone 30 mg and 15 Oxymorphone 40 mg prescriptions dispensed per month, or 15 and 4, respectively, per week over the indictment period of January 1, 2015 through March 13, 2018.

To hold Mr. Fabode responsible for even the total number of pills dispensed to the Deshikachar patients ignored the jury's verdict. First, the jury acquitted Mr. Fabode in Counts Five and Six, where he was accused of dispensing 180 tablets of Oxycodone to two patients who received a prescription from Dr. Deshikachar. Second, in rejecting the Government's request for a verdict finding that Mr. Fabode unlawfully dispensed Schedule III, IV and V controlled substances, the jury found a lack of proof sufficient to conclude that Mr. Fabode dispensed medications in these schedules outside the standard of care, and for no legitimate medical purpose, at any time during the indictment period.

While the Government may suggest that the variance granted by the Court may render any failure here harmless, the Supreme Court has held that properly calculated guidelines are central to the sentencing process, because they provide a framework that guides the rest of the process. The court previously explained that the Guidelines must be the sentencing court's "starting point and . . . initial benchmark. *Gall* v. *United States*, 552 U.S. 38, 49 (2007). More recently, the Court has held that "[w]hen a defendant is sentence under an incorrect Guidelines range – whether or not the defendant's ultimate sentence falls within the correct range – the error itself can, and most often will, be sufficient to show a reasonable probability of a

different outcome absent the error." *Molina-Martinez* v. *United States*, 136 S.Ct. 1338, 1346 (2016).

**3.  The sentence imposed created unwarranted sentencing disparities between parties similarly situated and constituted a penalty for exercising rights secured by the Fifth and Sixth Amendments to the US Constitution.**

Sentencing Courts are required, under U.S.C. §3553(a), to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in the statute. Subsection (6) of the statute requires the court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Of the co-defendants on the Indictment, only Mr. Fabode chose to proceed to trial. All the defendants have now been sentenced, and the disparity in the sentences between Mr. Fabode and everyone else is extreme.

| Defendant | Role | Sentence (mos) | Fabode sentence as multiple |
|---|---|---|---|
| Fabode | [Appellant] – co-owner of Friendz | 96 | -- |
| Sodiya-Ogundipe | Pharmacist – owner of two pharmacies | 21 | 4.57X |
| Rafi | Pharmacist – non-owner | 18 | 5.33X |
| Deshikachar | Prescribing Physician | 2 | 48X |
| N. Tibu | Leader/organizer | 36 | 2.66X |
| A. Tibu | Leader/organizer | 21 | 4.57X |

It is impermissible for a sentencing judge to penalize a defendant for exercising his constitutional right to go to trial. In fact, this Circuit has even noted this to be the case, no matter how overwhelming the evidence of guilt. *United States v. Derrick*, 519 F. 2d 1 (6th Cir. 1975), citing *Baker* v. *United States*, 412 F.2d 1069 (5th Cir.1969); *United States* v. *Marzette*, 485 F.2d 207 (8th Cir. 1973).

The magnitude of the disparity between the sentences raises the concern that Mr. Fabode was penalized severely because of his decision to go to trial. It also places into question the Court's following of the mandatory requirement that it impose a sentence "sufficient, but not greater than necessary" to comply with the purpose of the statute. Mr. Fabode received a sentence that was not merely greater than the sentence of any other co-defendant, including the leaders and organizers- it was greater by magnitudes. Mr. Fabode respectfully requests that the case be remanded to the district court for full consideration of the guideline scoring that must correctly calculated to establish the starting point for the court's consideration of a proper sentence. At the same time, Mr. Fabode respectfully requests that the district court be instructed specifically to consider the issue of disparity in the sentences.

### B. The Court Erred Reversibly by Admitting Evidence of a Prior State Investigation and Consent Order Pursuant to Federal Rule of Evidence 404(b).

Prior to trial, the Government provided notice and sought permission, to introduce evidence at trial relating to the 2011 investigation and sanction of Mr. Fabode by the State of Michigan relating to what it termed "prescription dispensing irregularities." Specifically, the government moved to admit "evidence related to the defendant's prescription dispensing irregularities that were investigated by the State of Michigan in 2011, statements made by the defendant during the course of that investigation, and his eventual agreement to a 1-year probation period and agreement to complete continuing education course related to proper prescribing in 2012 and 2013 as a condition of his pharmacy license." (R. 142, Government's Notice and Intent to Use and Motion in Limine to Allow Admission of Evidence of Other Crimes and Acts Pursuant to Fed. R. Evid. 404(B), PageID 621). The Government's stated justification was to prove knowledge and absence of mistake in the charged offenses.

In its motion and at hearing, the government's recounting was that during an inspection, the state pharmacy inspector concluded that the pharmacy ordered an excessive amount of controlled substances. The

inspector also noted that groups of controlled substance prescriptions seemed to be issued by the same prescribing physicians for the same controlled substances to different patients, raising concerns about pattern prescribing. Pattern prescribing – when the same prescriber issues the same controlled substance prescription to a number of patients – is a potential "red flag" that the prescriptions were not issued for a legitimate medical purpose. The state investigator also discovered that the Ohio State Highway Patrol had found 29 prescription bottles from Friendz Pharmacy, issues to several different patients, during a traffic stop and search.

The state matter was ultimately resolved with a consent order, in which Mr. Fabode plead no contest to an amended administrative complaint and was fined, required to earn continuing education credits, and placed on probation for a year. Defense counsel objected to the proposed evidence, indicating that he disagreed with the allegations in the state licensing matter and didn't want to have to relitigate the facts of the administrative case or have the government give the impression to the jury that Mr. Fabode admitted liability to what happened in 2011.

## Standard of Review on Appeal

While evidentiary issues are generally reviewed under an abuse of discretion standard, there is an on-going dispute in this Circuit concerning the proper standard of review of Rule 404(b) evidence. See *United States* v. *Clay*, 667 F.3d 689, 703 (6th Cir.2012) (Kethledge, J., dissenting) (noting the "longstanding intra-circuit conflict regarding the appropriate standard of review for evidentiary decisions under Rule 404(b)"); see also *United States* v. *Carter*, 779 F.3d 623,625 (6th Cir. 2015); *United States* v. *Chalmers*, 554 Fed.Appx. 440, 449 (6th Cir.2014) (noting the "disagreement in this circuit as to the standard of review for evidentiary questions under Federal Rule of Evidence 404(b)").

A district court abuses its discretion when it applies the wrong legal standard or misapplies the correct legal standard, *First Tech. Safety Sys., Inc.* v. *Depinet*, 11 F.3d 641, 647 (6th Cir.1993) such that we are left with "a definite and firm conviction that the trial court committed a clear error of judgment," *Harlamert* v. *World Finer Foods, Inc.*, 489 F.3d 767, 773 (6th Cir.2007) (citations omitted).

### Standard for admitting 404(b) Evidence

Under Rule 404(b), evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in

conformity therewith." It may be admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b).

Before the court may admit 404(b) evidence, it must: (1) determine whether there is sufficient evidence that the prior acts occurred; (2) determine whether the other act is admissible for one of the proper purposes outlined in the rule; and (3) apply Rule 403 balancing to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *United States* v. *Allen*, 619 F.3d 518, 523 (6th Cir.2010), cert. denied, ⸺ U.S. ⸺, 131 S.Ct. 841, 178 L.Ed.2d 560 (2010) (citation omitted). The district court's decision to admit such evidence is reviewed for abuse of discretion. Id. (citation omitted). *United States*. v. *Hardy*, 643 F.3d 143, 85 Fed. R. Evid. Serv. 484 (6th Cir. 2011).

First, no evidence was presented to show that the prior act occurred – government wants to rely on prior proceeding, but it was contested and resolved short of a decision. Mr. Fabode challenged the allegations. The matter was resolved with a no contest plea that didn't admit to any violation. Second, the admission of evidence was substantially more prejudicial than probative.

Mr. Fabode's defense was not predicated on an argument that he didn't know about which "red flag"s to look out for and when further investigation was warranted. Mr. Fabode instead argued that he had procedures in place and followed them to the extent that his dispensing was reasonable under the circumstances and within the scope of his professional practice for legitimate medical reasons.

The district court must balance the probative value of the evidence against its prejudicial effect. One factor in that assessment is the availability of other means of proof, which would reduce the need for potentially confusing evidence. *United States* v. *Myers*, 123 F.3d 350, 363 (6th Cir. 1997). Limiting instructions are also a factor. Id. *United States* v. *Hardy*, 643 F.3d 143, 153, 85 Fed. R. Evid. Serv. 484 (6th Cir. 2011).

The Sixth Circuit, however, held repeatedly that mere possession of a controlled substance is not sufficiently similar to distribution to be probative of a specific intent to distribute controlled substances, even though both are obviously controlled-substance offenses. See, e.g., *United States* v. *Bell*, 516 F.3d 432, 443–44 (6th Cir.2008); *United States v. Haywood*, 280 F.3d at 721–22; *United States* v. *Miller*, 562 Fed.Appx. 272, 284 (6th Cir. 2014).  In *Bell*, the Court explained that "our cases have only found such ['other act'] evidence probative of present intent ... when the prior [acts] were part of the

same scheme or involved a similar modus operandi as the present offense";
to hold otherwise would be to "employ[ ] the very kind of reasoning-i.e.,
once a drug dealer, always a drug dealer-which 404(b) excludes." *Bell*, 516
F.3d at 443–44 (citing cases). *United States* v. *Carter*, 779 F.3d 623 (6th Cir.
2015) "And meanwhile there looms, Kong-like, the prejudicial effect of the
prior conviction." When jurors hear that a defendant has on earlier occasions
committed essentially the same crime as that for which he is on trial, the
information unquestionably has a powerful and prejudicial impact."
*Johnson*, 27 F.3d at 1193. Even when properly instructed to consider the
evidence only for some legitimate purpose— as the jury was instructed
here—the danger is obvious that the jury will treat it as propensity evidence
instead. Under the similar analysis, this court has reversed a conviction
where the evidence was admitted in error. *United States* v. *Jenkins*, 593
F.3d 480 (6th Cir. 2010).

In addition, here the government compounded the error. The Court
originally instructed the government that the underlying facts of the earlier
investigation were not relevant and limited the permissible evidence to proof
of the consent judgment, which explicitly stated that Mr. Fabode was
pleading no contest to an allegation. He made no admissions in the course of

that proceeding. There is no doubt that the government was aware of the contents of the previous order, as they produced a copy in discovery.

Nevertheless, when Mr. Fabode was on the stand, the prosecutor tried to impeach him by falsely stating that Mr. Fabode had made admissions in the prior proceeding. Page ID 2260. This "were you lying then or now" questioning – which was not factually supported – placed Mr. Fabode in an untenable position during questioning, especially in a case where his credibility would be heavily evaluated by the jury. This improper questioning and its potential effect on the jury was compounded by the additional prosecutorial misconduct that will be addressed later in this brief.

### C. The Appellant is Entitled to Reversal of his Conviction Due to the Prejudicial Effect of Prosecutorial Misconduct

### Standard of Review

If no objection, Appellant must "surmount the significant hurdles of plain error review to receive a new trial. There are four of them: (1) the must be an "error or defect," (2) the error must be "clear or obvious, rather than subject to reasonable dispute," (3) the error "must have affected the appellant's substantial rights," and (4) the error must have "seriously

affected the fairness, integrity or public reputation of judicial proceedings."
*Puckett* v *United States*, 556 US 129 (2009). *Molina-Martinez* v *United States*, 136 S.Ct 1338 (2016).

While none of the prosecutor's statements drew an objection from trial counsel, the case may only be remanded for a new trial if plain error occurred. *United States* v. *Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994).

Plain error has three elements: "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Johnson* v. *United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (alteration in original) (internal quotation marks omitted) (quoting *United States* v. *Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ). "An error affects substantial rights if it affect[s] the outcome of the case." *United States* v. *Walker*, 761 Fed.Appx. 547, 551 (6th Cir. 2019) (internal quotation marks omitted) (quoting *United States* v. *Teh* , 535 F.3d 511, 516 (6th Cir. 2008) ). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467, 117 S.Ct. 1544 (alteration in original) (internal quotation marks omitted) (quoting *Olano* , 507 U.S. at 732, 113 S.Ct. 1770 ).

To determine whether the prosecutor's alleged misconduct was "so exceptionally flagrant that it constitutes plain error, and is grounds for reversal even [though] the defendant did not object to it," *United States* v. *Carter*, 236 F.3d 777, 783 (6th Cir. 2001) (quoting Carroll, 26 F.3d at 1385 n.6 ), the court considers four factors:

> [1] the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; [2] whether they were isolated or extensive; [3] whether they were deliberately or accidentally placed before the jury[;] and [4] the strength of the competent proofs introduced to establish the guilt of the accused.
> Carroll , 26 F.3d at 1384 (quoting

*United States* v. *Leon*, 534 F.2d 667, 679 (6th Cir. 1976) ), See also *United States* v. *Acosta*, 924 F.3d 288 (6th Cir. 2019).

When reviewing claims of prosecutorial misconduct, the Court first looks to whether the statements were improper. See *United States* v. *Krebs*, 788 F.2d 1166, 1177 (6th Cir.1986). If they appear improper, the Court determines if they were flagrant and warrant reversal. See *United States* v. *Carroll*, 26 F.3d1380, 1388 (6th Cir.1994).

To determine flagrancy, the standard set by this Court is: 1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally

before the jury; and 4) the total strength of the evidence against the accused. *United States* v. *Monus*, 128 F.3d 376, 394 (6th Cir.1997) (citing *United States* v. *Cobleigh*, 75 F.3d 242, 247 (6th Cir.1996); Carroll, 26 F.3d at 1385 (citing *United States* v. *Leon*, 534 F.2d 667, 679 (6th Cir.1976). To reverse a conviction because of an improper non-flagrant statement, a reviewing court must determine that: 1) the proof of the defendant's guilt is not overwhelming; 2) the defense counsel objected; and 3) the trial court failed to cure the impropriety by failing to admonish the jury. *Monus*, 128 F.3d at 394; *Carroll*, 26 F.3d at 1385-86 (citing *United States* v. *Bess*, 593 F.2d 749, 757 (6th Cir.1979)); *United States* v. *Francis*, 170 F.3d 546 (6th Cir. 1999).

"Those who have experienced the full thrust of the power of the government when leveled against them know that the only protection the citizen has is in the requirement for a fair trial. *Donnelly* v. *DeChristoforo*, 416 US 637, 651 (1974) (Douglas, J., dissenting). Prosecutorial misconduct compromises, at a minimum, "an aspect of a fair trial which is implicit in the Due Process Clause of the Fourteenth Amendment by which the States are bound." Id at 649.

When a prosecutor states or argues facts not in evidence, the jury hears and considers this information, yet the defendant has no opportunity to

cross-examine or challenge the allegations because no witness was ever called to testify. See *Douglas* v. *Alabama*, 380 US 415 (1965).

### 1. The Government impermissibly vouched for the truthfulness of its witnesses.

No issue was more important to Mr. Fabode's case than credibility. Mr. Fabode presented, and the jury was instructed on, a good faith defense, which entitled him to an acquittal unless the government disproved that he was acting in good faith when he dispensed prescribed medications. Resolution of those issues involved assessing the credibility of government witnesses. In material respects, the testimony differed between government witness and defense witness. The jury was also required to assess Mr. Fabode's credibility after he had to take the stand when the prosecutor discouraged his partner, Mr. Bolanle, from testifying.

Because of the importance of the evaluation of credibility, the government's misconduct during closing argument was critically prejudicial. An absolutely basic principle in closing argument is that the government may not vouch for the credibility of its witnesses. The government, however, did just that here.

Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility,

thereby placing the prestige of the office of the United States Attorney behind that witness. See, e.g., *Taylor* v. *United States*, 985 F.2d 844, 846 (6th Cir.1993); *United States* v. *Martinez*, 981 F.2d 867, 871 (6th Cir.1992). Generally, improper vouching involves either blunt comments, see, e.g., *United States* v. *Kerr*, 981 F.2d 1050, 1053 (9th Cir.1992) (stating that improper vouching occurred when prosecutor asserted own belief in witness's credibility through comments including "I think he [the witness] was candid. I think he is honest."), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony, see, e.g., *Carroll* 26 F.3d at 1388 (stating that improper vouching occurred when prosecutor argued that the witness testifying under a plea agreement was in jeopardy if the court or government did not find the testimony truthful).

Here the specific vouching incident stems from the prosecutor's statement regarding credibility, and then a further reference to the plea agreements of the testifying witnesses. Courts have allowed the government to refer to the plea agreement of a testifying witness. See *United States* v. *Renteria*, 106 F.3d 765, 767 (7th Cir.1997). The prosecutor may elicit testimony about its terms, attack the credibility of the witness because of it and even refer to the plea agreement of a government witness in an attempt

to deflect defense counsel's use of the agreement to attack the witness's credibility. See *United States* v. *Monroe*, 943 F.2d 1007 (9th Cir.1991), cert. denied, 503 U.S. 971, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992).

The potential for impropriety emerges acutely, however, when a prosecutor explains that there is to be a recommendation to the witness's sentencing court whether the terms of the plea agreement have been adhered to. Because that recommendation is dependent upon whether the witness testifies truthfully, it is easy for a prosecutor to imply, either intentionally or inadvertently, that the prosecutor is in a special position to ascertain whether the witness was, in fact, testifying truthfully. *Carroll*, 26 F.3d at 1387. Such implication leads quickly to improper vouching. See also *United States* v. *Dandy*, 998 F.2d 1344, 1353 (6th Cir.1993); *United States* v. *Francis*, 170 F.3d 546 (6th Cir. 1999).

The government is prohibited from stating a personal belief that a witness is telling the truth. This prohibition is even more important with a cooperating witness, whose testimony must be viewed with more suspicion and scrutinized more closely than a regular witness.

All the prosecution's civilian and non-expert witnesses in Mr. Fabode's were cooperating witnesses in some respect. The witnesses who testified that they were instructed by Niesheia Tibu on what to say to obtain

prescriptions and then were taken to pharmacies to have the prescriptions filled were never charged with an offense in this case, although the conduct they admitted to violated the Controlled Substance Act. All the testifying indicted co-defendants stated explicitly that they participated in criminal activity and were testifying pursuant to agreements in which they hoped the government would recommend leniency in sentencing.

The governments statements here were particularly flagrant. With respect to the cooperators, the prosecutor stated to the jury, in closing: "All of them testified that recommendation does not come in unless their testimony is truthful. And they were here to speak the truth, which is what they did. They've all accepted responsibility for their actions, and they were here to tell you about the truthful testimony they've given as to what their roles were in this conspiracy." (PageID 2457).

Moreover, the government asked the jury to find that Mr. Fabode's testimony was not credible, placing the vouched-for witnesses in direct conflict with Mr. Fabode. (Even if word "lie" was not used, that was the clear implication of prosecutor's argument. Lest there be any doubt that was the government's argument, the government asserted at sentencing that Mr. Fabode should have been assessed points for obstruction of justice based on his trial testimony, a notion the trial court rejected).

It is patently improper for a prosecutor either to comment on the credibility of a witness or to express a personal belief that a particular witness is lying. *United States* v. *Young*, 470 U.S. 1, 17-19, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *Berger*, 295 U.S. at 86-88, 55 S.Ct. 629: See *Hodge* v. *Hurley*, 426 F.3d 368 (6th Cir. 2005).

This Circuit in *Hodge* v *Hurley* reversed a conviction based on prosecutorial misconduct including vouching. The Court clearing explained the danger.

> As the Supreme Court explained in *Young*, there are two separate harms that arise from such misconduct. First, "such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury." *Young*, 470 U.S. at 18, 105 S.Ct. 1038. Second, "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." Id. at 18-19, 105 S.Ct. 1038. Both concerns are implicated in this case. The prosecutor's numerous statements on witness credibility — often unsupported by any rational justification other than an assumption that Hodge was guilty — cannot avoid suggesting to the jury that the prosecutor knows something they do not. Moreover, because these statements by the prosecutor were not coupled with a more detailed analysis of the evidence actually adduced at trial, they convey an impression to the jury that they should simply trust the State's judgment that Fenn was... "a credible witness and that the defendant's witnesses were non-credible, if not perjurious. This misconduct is especially prejudicial in this case given the

extent to which the jury's determination as to Hodge's guilt
or innocence hinged almost entirely on the credibility of
Hodge and Fenn.

*Hodge* v. *Hurley*, 426 F.3d 368, 378 (6th Cir. 2005)

*See also, United States* v. *Carroll*, 26 F.3d 1380 (6th Cir.1994) (reversal based on prosecutors argument that government witness' plea agreement ensured that his testimony was credible; Court of Appeals noted, at page 1389 that "We cannot overstate the extent to which we disapprove of this sort of improper vouching by prosecutors).); *United States* v. *Manning*, 23 F.3d (1st Cir.1994) (reversal where prosecutor vouched for key witness' credibility), *United States* v. *Kerr*, 981 F.2d 1050 (9th Cir.1992).


**2. The Government repeatedly referred to facts not in evidence of an inflammatory nature and misstated the evidence.**

It is the prosecutor's obligation to ensure that the testimony he presents does not mislead the jury. *United States* v. *Myerson*, 18 F.3d 153 (2nd Cir. 1884), The prosecutor may not suggest that the testimony justifies a conclusion that he knows is unwarranted. Such conduct is a violation of due process, see e.g. *Giglio* v *United States*, 405 US 150 (1972); *Schledwitz* v. *United States*, 169 F.3d 1003 (6th Cir. 1990). Misrepresenting facts warrants a new trial, *Dais* v. *Zant*, 36 F.3d 1528 (11th Cir.1994); *United States* vs

*Kojayan*, 8 F.3d 1315 (9th Cir. 1993)*; United States* v. *Elizondo*, 920 F.2d 1308 (7th Cir.1990). *Berger* v. *United States*, 295 US 78, 88 (1935); *United States* v. *Donato*, 99 F.3d 426 (D.C. Cir.1996).

The government may argue that this was an insignificant point. That, however, is incorrect. There is no question that the Tibus conspired with Dr, Deshikachar to procure fraudulent prescriptions. The issue for the jury's consideration, however, was whether Mr. Fabode knew the prescriptions were fraudulent and intended to fill them outside the scope of his practice and without any medical necessity. The government's introduction of the spectre of acts outside of the scope of the indictment coupled with the unsupported argument that all the 30 mg oxycodone as well as oxymorphone pills were illicit (i.e., the inclusion of tens of thousands of pills for which no evidence existed to support a finding of illegality) could have influenced the jury's view of the evidence. As others have argued before "[e]ven if it only provided one brick for the government's wall, it could have been the key stone. As a deliberately flawed brick, it compels the belief that the wall itself is flawed."

The danger with the government's implying of a much greater amount of allegedly illicit prescription doses is similar to that which exists with vouching for witnesses. If the government repeatedly refers to an inflated

number, the jury may jump to the conclusion that the government is in possession of additional evidence.

Even if the court were to find that none of the district court's alleged errors alone entitle him to a new trial, Mr. Fabode" convictions should be reversed because "[t]he cumulative effect of errors that are harmless by themselves can be so prejudicial as to warrant a new trial." *United States* v. *Sypher*, 684 F.3d 622, 628 (6th Cir. 2012) (citing *United States* v. *Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000)).

The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio* v. *United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (internal quotation marks omitted). "This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony." *Workman* v. *Bell*, 178 F.3d 759, 766 (6th Cir.1998).

The Court has "fashioned a three-part test for determining whether there was a denial of due process through the use of false testimony." *Peoples v. Lafler*, 734 F.3d 503, 515 (6th Cir.2013). The defendant must establish that "(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." Id. at 516. A false statement is material "if the false testimony could in any reasonable

likelihood have affected the judgment of the jury." *Brooks* v. *Tennessee*, 626 F.3d 878, 895 (6th Cir.2010) *United States* v. *Collins*, 799 F.3d 554 (6th Cir. 2015).

Here, the repeated statements that Mr. Fabode trafficked in more than 200,000 doses of medication and took in well over a million dollars from illicit sales was completely unsupported by the evidence and constitutes prosecutorial misconduct that both alone and in combination with improper vouching for witnesses necessitates a reversal of Mr. Fabode's convictions.

### D. The Government Impermissibly Interfered with Mr. Fabode's Right to Present a Defense by Convincing a Critical Witness Not to Testify.

Prior to trial, Mr. Fabode notified the government and the court of his intention to call his partner in the pharmacy, Mr. Bolanle, as a witness. The partner's testimony was critical to the defense. With an absence of testimony corroborating any explicit agreement with Mr. Fabode to violate the Controlled Substance Act, the government's case focused primarily on evidence of "red flags" that could indicate the diversion of medication. To that end, the prosecution presented testimony from Case Agent Chad Allen, Expert Witness Carmine Catizone, and Niesheia Tibu, among others.

The government witnesses, however, conceded that none of these so-called "red flags" were factors that, in and of themselves, were illegal. Rather, red flag evidence triggered a responsibility on the part of the dispensing pharmacist to look more closely, in order to comply with the legal obligation to only dispense prescribed controlled substances that a pharmacist, under the circumstances, reasonably believed to be within the scope of ordinary professional medical practice for a legitimate purpose. *United States* v. *Godofsky*, 943 F.3d 1011,1026 (6th Cir. 2019), citing *United States* v. *Volkman*, 797 F.3d 377 (6th Cir. 2015).

As indicated before, the government successfully sought admission of evidence that preceded the indictment period, pursuant to FRE 404(b), based on the argument that the partners had previously been instructed on red flags to watch out for and steps to take to prevent diversion. To rebut the government's evidence, Mr. Fabode sought to present evidence through his partner of policies the pharmacy adopted and steps taken to prevent the diversion of medications. This testimony was central to Mr. Fabode's defense, and he provided an offer of proof as to the anticipated testimony at trial. (Page ID 1729-1735, 2007-2011). Any exclusion of such evidence, including that which corroborated Mr. Fabode's own testimony after he was

47

forced to take the stand due to the absence of Mr. Bolanle, infringed on Mr. Fabode's constitutional right to present a defense.

Before trial, Mr. Bolanle had indicated that he was willing to testify on Mr. Fabode's behalf. The government during the final pretrial told the court that Mr. Bolanle had been placed on the Defendant's witness list and, for the first time, stated that Mr. Bolanle had criminal exposure "in operating the pharmacy" and Fifth Amendment issues if he took the stand. The government suggested that Mr. Bolanle only be allowed to testify if he waived his right to self-incrimination with advice of counsel. The Court then prohibited defense counsel from speaking with Mr. Bolanle directly, prior to the start of trial, even if done in the presence of counsel for Mr. Bolanle. (Transcript of Motion Hearing, October 22, 2019, Page 21). The Court ultimately appointed counsel for Mr. Bolanle.

Importantly, the inclusion of Mr. Bolanle on the defense witness list did not occur in a vacuum. The government had presented extensive information, in discovery, directly pertaining to Mr. Bolanle. Reports and interviews provided in discovery indicated that Mr. Bolanle had filled prescriptions that were picked up by Niesheia Tibu and others, and that she had contact with him at the pharmacy.

Six months before trial, and nearly a year after Mr. Fabode and his co-defendants had been indicted, the case agents approached Mr. Bolanle at his home. There is no indication that Mr. Bolanle was advised that he was the target or subject of investigation or that he was advised of his constitutional rights. Mr. Bolanle was interviewed extensively about the operation of the pharmacy, his business partnership with Mr. Fabode, his knowledge of and interactions with the indicted defendants, how prescriptions were dispensed, his understanding of indications of prescription diversion and a host of other topics. He told the agents he was surprised that Mr. Fabode had been arrested and that he never saw anything that would cause him to question Mr. Fabode's practices. In addition, the government produced information in discovery about the State of Michigan's licensing investigations concerning Mr. Fabode, Mr. Bolanle and Friendz pharmacy. The defense believed that the information Mr. Bolanle provided to the case agents and others was critical to his defense, and issued a subpoena for testimony at trial.

By the time of trial then, Mr. Bolanle's knowledge, actions and professional practices were anything but unknown to the government. (Transcript, R.194, Page ID 2004-2005) In fact, they had examined intently. Yet, Mr. Bolanle had not been arrested or charged with a crime and his pharmacy license remained intact.

49

In short, prior to being placed on Mr. Fabode's witness list, the government was neither concerned about Mr. Bolanle's constitutional privileges or imposing any criminal liability to him for any conduct at the pharmacy. It was only after learning that he would testify in support of his partner that the government suddenly became hypervigilant about "protecting his rights."

Ultimately, the government was successful in this transparent attempt to dissuade Mr. Bolanle from testifying. At the government's urging, counsel was appointed for Mr. Bolanle. Mr. Bolanle's appointed counsel met with the government and was provided with reports and information. The government informed counsel that, in its view, Mr. Bolanle was an unindicted coconspirator who knowingly filled fraudulent prescriptions. Based on the conversation with the government, counsel advised Mr. Bolanle. Mr. Bolanle refused to testify and the Court quashed his subpoena.

Predictably, the government's interest in Mr. Bolanle evaporated as quickly as the subpoena. To date, he has never been charged with any crime and his State of Michigan pharmacy license remains active.

Interference with the calling of witnesses violates the Defendant's Sixth Amendment to compulsory process, as well as his or her due process right to a fair trial under the 14th Amendment. The Supreme Court explained:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington* v. *Texas*, 388 U.S. 14 at 19, 87 S.Ct. 1920 1923, 18 L.Ed.2d 1019, 1023 (1967). *See also, Webb* v. *Texas*, 409 U.S. 95 (1972).

It is well established that "substantial government interference with a defense witness's free and unhampered choice to testify amounts to a violation of due process." *United States* v. *Little*, 753 F.2d 1420, 1438 (9th Cir.1984). A defendant alleging such interference is required to demonstrate misconduct by a preponderance of the evidence. *See United States* v. *Lord*, 711 F.2d 887, 891 n. 3 (9th Cir.1983). Whether substantial government interference occurred is a factual determination to be made by the district court that we review for clear error. See *United States* v. *Baker*, 10 F.3d 1374, 1415 (9th Cir.1993); Little, 753 F.2d at 1439; *United States. v. Vavages,* 151 F.3d 1185,1188 (9th Cir. 1998).

In this case, Mr. Fabode's knowledge and intent at the time of dispensing prescription medication was central to the issues that were to be

decided by the jury. The jury was instructed that they could not convict a pharmacist who dispensed controlled substances in good faith to patients in the regular course of professional practice. (Transcript, R. 199, Page ID 2379) The jury was further instructed that good faith "connotes an observance of conduct in accordance with what the pharmacist should reasonably believe to be proper pharmacy practice" and that the burden was on the government to disprove good faith. (Transcript,R. 199, Page ID 2380)

Reports and documents produced by the government in discovery recounted Mr. Bolanles' explanation and observation of conduct the policies that had been put in place to prevent diversion. Mr. Bolanle's testimony could not have been more germane to Mr. Fabode's good faith defense. Even after Mr. Fabode was forced to take the stand, after Mr. Bolanle had been discouraged from testifying, Bolanle's would have corroborated critical parts of Fabode's testimony and cast doubt on the testimony of other government witnesses. The testimony was critical to the jury's determination of "where the truth lies."

In *United States* v. *MacCloskey,* 682 F.2d 468, 475 (4th Cir.1982), the government's attorney suggested to a prospective witness's attorney that "he would be well advised to remind his client [the witness] that, if she testified at MacCloskey's trial, she could be reindicted [for conspiracy to murder] if

she incriminated herself during that testimony [for MacCloskey]." We held that the government's suggestion to the attorney for the witness, as just related, "destroyed the choice ... [of the witness] to testify freely." 682 F.2d at 479. We held that the error was not harmless and that it "independently warrants the grant of a new trial." 682 F.2d at 479.

The government could have cured its infringement on Mr. Fabode's right to present his defense by offering Mr. Bolanle immunity for his actions at the pharmacy – after all, the government has clearly indicated by its actions since 2018 that it no intention of prosecuting him. Because of its agents' reports concerning their interview of Mr. Bolanle, the government already knew what his testimony would be at trial. In addition, if the government believed Mr. Bolanle had testified at trial untruthfully, they would have retained the right to prosecute for perjury.

Indeed, defense counsel suggested such an approach to immunity, which the Court and government rejected. (Transcript, R. 193 Page ID 1731-1732; 2014).

Courts have previously found that there are circumstances under which it appears due process may demand that the Government request use immunity for a defendant's witness. See dicta in *United States* v. *Leonard*, 161 U.S.App.D.C. 36, 494 F.2d 955, 985 n. 79 (1974) (concurring and

dissenting opinion of Bazelon, C. J.); and Cf. *Earl* v. *United States*.,124 U.S.App.D.C. 77, 361 F.2d 531, 534 n.1 (1966) (Burger, J.).

In *United States* v. *Morrison*, 535 F.2d 223 (3rd Cir. 1976), the Third Circuit found such a circumstance when prosecutorial misconduct caused the defendant's principal witness to withhold out of fear of self-incrimination testimony which would otherwise allegedly have been available to the defendant. Finding that immunity without a government request, the Court presented a choice to the government at the new trial it ordered: if the defense witness in question was called as a witness and she invoked her Fifth Amendment rights not to testify, a judgment of acquittal would be entered unless the Government requested use immunity for her testimony. *Morrison* at 229.

Neither a court or prosecutor should admonish or intimidate witnesses in a way that interferes with a defendant's due process rights. In *Webb* v. *Texas*, 409 US 95, 97-98 (1972) (per curiam), the US Supreme Court held that a trial judge's "lengthy and intimidating warning" and threatening remarks effectively cause the defendant's only witness not to testify" and therefore, violated the defendant's constitutional rights. In determining whether a court's or prosecutor's warnings cross the line, reviewing courts will examine the extent to which "the government actor actively

discourage[d] a witness from testifying through threats of prosecution, intimidation or coercive badgering." *United States* v. *Serrano*, 406 F3d 1208, 1216 (10th Cir.2005). A defendant has a right to call an accomplice who is willing to testify, *Washington* v. *Texas*, 388 US 14 (1967). Fifth Amendment warnings should not be used to deny a defendant testimony from alleged accomplices or other witnesses

Circumstances of prosecutorial misconduct will warrant reversal if the conduct interfered substantially with a witness' "free and unhampered choice" to testify. *United States* v. *Goodwin*, 625 F.2d 693, 703 (5th Cir.1980). The existence of "substantial interference" is a factual question, and as such is reviewed by this court under a clearly erroneous standard. *United States* v. *Pinto*, 850 F.2d 927, 932 (2d Cir.), cert. denied, 488 U.S. 867, 932 (1988).

Mr. Fabode respectfully requests that this Court find that the efforts to keep Mr. Bolanle off the witness stand – due to the government's pointed warnings to him – were improper, especially given that the concerns about his criminal liability lasted only from the moment he was placed on the defense witness list and evaporated as soon as he refused to testify. Accordingly. Mr. Fabode asks that he be granted a new trial, where the

government can either provide Mr. Bolanle with use immunity or have the indictment dismissed.

## Conclusion

For the foregoing reasons, Mr. Fabode respectfully requests that this Honorable Court reverse his conviction and remand the matter to the district court for further proceedings. If the Court does not agree with that relief, Mr. Fabode respectfully requests that the case be remanded to the district court for specific findings and resentencing.

Respectfully Submitted,

/s/ Richard M. Shulman

_____

By: Richard M. Shulman (P51931)
Attorney for Defendant
24750 Lahser Road, Suite 105
Southfield, MI 48033
(248) 330-7800
rshulman@rshulmanlaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief has been produced in 14-point proportionally spaced Times New Roman Font and consists of 12,416 words. It therefore complies with the 13,000-word limit of Fed. R. App. P. 32 for opening briefs.


/s/ Richard M. Shulman

_____

By: Richard M. Shulman (P51931)
Attorney for Defendant
24750 Lahser Road, Suite 105
Southfield, MI 48033
(248) 330-7800
rshulman@rshulmanlaw.com

57

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2022 I electronically filed this **Appellant's Brief on Appeal (Corrected)** with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ Richard M. Shulman

_____

By: Richard M. Shulman (P51931)
Attorney for Defendant
24750 Lahser Road, Suite 105
Southfield, MI 48033
(248) 330-7800
rshulman@rshulmanlaw.com

## Designation of Relevant District Court Documents

The Appellant, Abiodun Fabode, cites to the following documents available electronically in the district court's record, Case No. 2:18-cr-20351:

| Record Entry No. | Document Description | Page ID |
|---|---|---|
| 1 | Indictment | 1-17 |
| 129 | Superseding Indictment | 585- 595 |
| 142 | Government Motion in Limine to Admit Other Acts Evidence Pursuant to FRE 404(b) | 621-635 |
| 152 | Jury Verdict Form | 833-836 |
| 188 | Transcript of Trial October 28, 2019 | 1036-1170 |
| 189 | Transcript of Trial October 29, 2019 | 1171-1307 |
| 190 | Transcript of Trial October 30, 2019 | 1308-1441 |
| 191 | Transcript of Trial October 31, 2019 | 1442-1584 |
| 192 | Transcript of Trial November 1, 2019 | 1585-1724 |
| 193 | Transcript of Trial November 4, 2019 | 1725-1891 |
| 194 | Transcript of Trial November 5, 2019 | 1892-2016 |
| 195 | Transcript of Trial November 6, 2019 | 2017-2112 |
| 196 | Transcript of Trial November 7, 2019 | 2113-2242 |
| 197 | Transcript of Trial November 8, 2019 | 2243-2330 |
| 199 | Transcript of Trial November 12, 2019 | 2361-2474 |
| 200 | Transcript of Trial November 13, 2019 | 2475-2484 |
| 238 | Government Sentencing Memorandum | 2636-2660 |
| 240 | Defendant's Sentencing Memorandum | 2716-2770 |
| 242 | Judgment as to Abiodun Fabode | 2773-2779 |
| 243 | Notice of Appeal by Abiodun Fabode | 2780 |
| 252 | Amended Judgment as to A. Fabode | 2811- 2818 |
| n/a | Presentence Report – Abiodun Fabode | |
| | | |
| | | |
| | | |